**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

QUASON PARKER,

                                    Plaintiff,

            v.                                                      1:19-CV-113
                                                                    (GLS/CFH)
DAVID SOARES, et al.,

                                    Defendants.

---

**APPEARANCES:**

Quason Parker
50 Chestnut Street
Cohoes, New York 12047
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION & ORDER

### I. **In Forma Pauperis**

On January 28, 2019, plaintiff pro se Quason Parker commenced this action with

the filing of a complaint and, in lieu of paying this Court's filing fee, submitted a motion

for leave to proceed in forma pauperis ("IFP").  Dkt. Nos. 1, 2.  After review of plaintiff's

IFP application, dkt. no. 2, it is determined that plaintiff financially qualifies to proceed

IFP.[1]

---

[1]    Plaintiff is advised that, despite being granted IFP status, he is still required to pay in full any
costs or fees that he may incur in this action, including, but not limited to, any copying fees or witness
fees.

## II.  **Initial Review**[2]

### A.  **Legal Standard**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief."  See FED. R. CIV. P. 8(a)(2).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).  Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction . . .;
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought . . . .

---

[2] Any unpublished decisions cited to within this Report-Recommendation and Order are attached.

FED. R. CIV. P. 8(a).  Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct."  Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading.  If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

In deciding whether a complaint states a colorable claim, a court must extend a measure of deference to pro se litigants, Nance v. Kelly, 912 F.2d 605, 606 (2d Cir.1990) (per curiam), also referred to as "special solicitude."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006).  However, the court also has an obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed.  See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355

3

(N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." <u>Salahuddin v. Cuomo</u>, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." <u>Id.</u> (citations omitted). In such cases of dismissal, particularly when reviewing a <u>pro se</u> complaint, the court generally affords the plaintiff an opportunity amend the complaint as long as there is a possibility that an amendment would be able to cure the identified defects. <u>See</u> <u>Simmons v. Abruzzo</u>, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citation omitted).

## B. Review of Complaint

### 1. Complaint

Plaintiff names as defendants in this action the County of Albany, City of Cohoes Police Department, Albany County District Attorney David Soares, Assistant District Attorney ("ADA") Jennifer E. McCanney, Cohoes Chief of Police William Heslin, Detective Michael Greene, Detective Jason Johnston, Police Officer Scott J. McCown,

and unnamed Lieutenant #1319.  See generally Compl.  Plaintiff's complaint is difficult

to comprehend and the time line of events is not entirely clear.  Id.  Further, plaintiff

attaches various documents to his complaint that appear to be police records; however,

some of these pages are either cut off or the copy provided to the court has dark marks

over portions of the pages, rendering those portions illegible.  Id.  However, reading the

complaint liberally and applying special solicitude, the Court has gleaned the following.

Plaintiff appears to allege that defendant Cohoes Police Department ("CPD") deprived

him of his constitutional rights insofar as CPD officers refused him the ability to file a

cross-complaint against someone with whom he was involved in an altercation.  Id. at 4,

6.  Further, as the result of the altercation, which apparently occurred on October 4,

2018, according to exhibits annexed to the complaint, plaintiff was charged with

violating an order of protection/stay away order and criminal contempt in the second

degree.  Id. at 14.  There also appears to have been an incident on November 7, 2018,

wherein plaintiff was accused of obstructing the breathing of an alleged victim and it

was alleged that he threatened to kill her.  Compl. at 25, 27.  It appears that, at some

point, plaintiff was also accused of forcible rape/sexual assault, obstruction of

breathing, and unlawful imprisonment.  Id. at 15, 17, 20, 22, 24.  It is not clear if this

accusation or charge arose out of either the October 4, 2018, or November 8, 2018,

incidents or are from another incident.  Plaintiff appears to have been charged with rape

first degree, forcible compulsion; criminal sexual act first degree, by force; criminal

obstruction of breathing; and assault in the third degree, with intent to cause physical

injury.  Id. at 32-33.  However, it appears from the attachments that the alleged victim

recanted her statement.  Id. at 37. Thus, it is unclear whether plaintiff was charged with these offenses, whether any of these charges are still pending, or whether any convictions have followed as a result of these incidents.

Plaintiff also appears to contend that he was accused of certain crimes, despite there being a lack of medical records or photographs to substantiate the crimes. Compl. at 4. He further argues that the Cohoes Police Department and Albany County improperly denied him the ability to file a cross-complaint.  Id.  Next, plaintiff argues that he was deprived of his due process rights insofar as the alleged victim was permitted to confront the grand jury without the grand jury being informed of the alleged victim's own criminal past and apparently outstanding warrants.  Id. at 5.  Plaintiff also alleges false arrest, false imprisonment, malicious prosecution, official misconduct, due process violations, equal protection violations, and various Monell claims regarding the Cohoes Police Department and Albany County District Attorney's office failure to train or supervise with relation to permitting cross-complaints and with respect to the grand jury.  See generally Compl.

## 2.  Analysis

### a. Monell Claims

Plaintiff makes various contentions that the County of Albany and the City of Cohoes failed to train its subordinates regarding the handling of requests for cross complaints and the presentation to the grand jury, suggesting that he wishes to bring Monell claims against the County of Albany and Cohoes Police Department for the

actions of the Cohoes police officers, the Albany County District Attorney David Soares, and Assistant District Attorney Jennifer E. McCanney.

It is well settled law that "a municipality cannot be held liable solely on a theory of respondeat superior." <u>Anderson v. Cnty. of Nassau</u>, 297 F. Supp. 2d 540, 546 (E.D.N.Y. 2004). "Local governments are only responsible for their own illegal acts and are not vicariously liable for their employees' actions under a theory of respondent superior." <u>Waller v. City of Middletown</u>, 89 F. Supp. 3d 279, 284 (D. Conn. 2015) (citation omitted).  However, "'[a] municipality or other local government may be liable under [Section 1983] if the government body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.'" <u>Id.</u> (quoting <u>Connick v. Thompson</u>, 563 U.S. 51 (2011)).  "Therefore, to state a Section 1983 claim against a municipality, a plaintiff is required to plead a violation of a federally protected right that was caused by the municipality's official policy or custom, or by a decision of a policymaker with final policymaking authority." <u>Id.</u> (citing <u>Monell v. Dep't of Soc. Services</u>, 436 U.S. 658 692 (1978)). "Where as here, a municipality's training program is at issue, 'failure to train [municipal] employees may constitute an official policy or custom if the failure amounts to 'deliberate indifference' to the rights of those with whom the [municipal] employees interact.'"  <u>Id.</u> (quoting <u>Wray v. City of New York</u>, 490 F.3d 189, 195 (2d Cir. 2007)).

> To succeed on this claim, Plaintiff would eventually have to submit evidence that defendants knew to a moral certainty that the City would confront a given situation; the situation presented the City with a difficult choice or there was a history of its mishandling the situation; and the wrong choice by the City would frequently cause the deprivation of

> plaintiffs' rights. <u>Reynolds v. Giuliani</u>, 506 F.3d 183, 192 (2d
> Cir. 2007). Additionally, a Plaintiff must "establish that
> defendant breached its duty to act by failing to make
> meaningful efforts to address the risk of harm to plaintiffs."
> <u>Id.</u>

<u>Lyman v. City of Albany</u>, 536 F. Supp. 2d 242, 250 (N.D.N.Y. 2008). Thus, "in order to

establish municipal liability, plaintiff must establish that an identified municipal policy

was the 'moving force [behind] the constitutional violation.'" <u>Plair v. City of New York</u>,

789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (quoting <u>Monell</u>, 436 U.S. at 694) (emphasis

added)).


### i. Cohoes Police Department

"Municipalities are considered 'persons' who can be sued under § 1983." <u>Monell</u>

<u>v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 (1978). 'A police department is an

administrative arm of the municipal corporation.'" <u>Lluberes v. City of Troy</u>, 11-CV-1346

(CFH), 2014 WL 1123413, at *8 (N.D.N.Y. Mar. 21, 2014) (quoting <u>Leland v. Moran</u>,

100 F. Supp.2d 140, 145-46 (2000) (citing <u>Baker v. Willett</u>, 42 F.Supp.2d 192, 198

(N.D.N.Y. 1999)). Thus, insofar as plaintiff seeks to proceed against the Cohoes Police

Department, plaintiff could properly proceed only by suing the City of Cohoes, as the

City of Cohoes is "the real party in interest." <u>Id.</u>

Insofar as plaintiff attempts to set forth a failure to train argument against the City

for its officers refusing to allow him to file a cross-complaint, plaintiff does not contend

that the officers/city had a pattern of refusing to allow such complaints to be filed.

However, at this early stage, the undersigned believes plaintiff has arguably alleged

enough to state a colorable claim.  See Hardie v. City of Albany, 1:18-CV-470

(GLS/CFH), 2018 WL 4026736, at *5 (N.D.N.Y. Aug. 22, 2018), Report-

Recommendation adopted, 2018 WL 4288614 (N.D.N.Y. Sept. 7, 2018) (citing Waller,

89 F.Supp. 3d at 285-86) (recognizing that where the plaintiff does not plead a

pre-existing pattern of violations, the plaintiff's Monell claim against the city turns on a

"single violation demonstrating that the City was deliberately indifferent" as it relates to

the plaintiff's incident with the officers, and noting that although it is not clear whether a

plaintiff can proceed under a Monell claim of a single incident, Supreme Court case law

has not precluded such a claim).  However, despite so concluding, as noted, plaintiff

has named an improper defendant.  Accordingly, it is recommended that plaintiff's

Monell claim against the Cohoes Police Department be dismissed with prejudice, but

that the dismissal be without prejudice to plaintiff amending his complaint to substitute

as a party the City of Cohoes to allege his failure to supervise claim as it relates to the

filing of a cross-complaint.  Plaintiff is advised that if he wishes to proceed against the

City of Cohoes on his theory that there was a failure to train the police officers with

relation to filing of a cross-complaint, and should the District Judge permit him to

amend, he must reallege all facts and claims in any amended complaint.[3]

---

[3] Plaintiff is advised that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977), cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp., 434 U.S. 1014(1978); see also Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, any amended complaint must include all of the allegations against each of the defendants against whom the case is going forward so that the amended complaint may stand alone as the sole complaint in this action.

**ii. County of Albany**

Next, plaintiff appears to argue that the County of Albany is responsible for the alleged failures of the Albany County District Attorney David Soares and ADA. Here, although plaintiff has named the proper party under <u>Monell</u>, plaintiff has not sufficiently pleaded a <u>Monell</u> claim. Plaintiff appears to argue that there exists a policy or custom within the County. More specifically, plaintiff contends that the County has a "long standing policy for Evidence for Misconduct, as well as covering up wrongdoing" and "sanctioning police misconduct." Compl. at 7. He argues that the County failed to train DA Soares and ADA McCanney with respect to "addressing" cross complaints and presenting a case to the grand jury. <u>Id.</u> at 6, 8. He argues that the DA's office erroneously presented the case to the grand jury without evidence of medical documentation or pictures to substantiate the claims and without informing the grand jury that the alleged victim had her own criminal history. <u>Id.</u> at 6. Plaintiff alleges that the District Attorney's office engaged in "selective treatment" in order "tompunish [sic] (prosecute) this Plaintiff for exercising the Fundamental Constitutional Right to file a Cross-Complaint for which this said Plaintiff was denied." <u>Id.</u> at 7. Plaintiff contends that the DA's office's decision to prosecute plaintiff as a punishment for seeking to file a cross-complaint violates his right to equal protection of the laws. <u>Id.</u> Plaintiff further argues that the Albany County also had a policy or custom of "sanctioning police misconduct" and a "long standing policy for evidence for misconduct, as well as covering up wrongdoing." <u>Id.</u>

However, it is well-settled that even at this early stage, a conclusory allegation of

10

a policy or custom – without identifying that policy with specificity – does not suffice.  In order to establish municipal liability, "plaintiff must establish that an identified municipal policy was the 'moving force [behind] the constitutional violation.'"  Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (quoting Monell, 436 U.S. at 694) (emphasis added).  He sets forth a general allegation that the acts he alleges the County has engaged in – sanctioning police misconduct and punishing him for attempting to exercise his constitutional rights – is a policy or custom within the County/District Attorney's Office.  Here, plaintiff has not alleged an "affirmative link" between the policy/failure to train and the constitutional violation alleged.   Accordingly, as to plaintiff's Monell claims against Albany County, it is recommended that his Monell claim against the County of Albany be dismissed without prejudice and with opportunity to amend in order to attempt to allege an affirmative link between the alleged policy or custom and the constitutional violations he contends occurred.

### b.  Heck

Plaintiff several claims that appear to suggest that he wishes to proceed on claims of malicious prosecution, false arrest, and false imprisonment. Plaintiff's exhibits indicate that he was charged with various crimes as a result of at least one incident and that at least some charges were presented to the grand jury.  However, it is entirely unclear from plaintiff's complaint the status of those charges, whether he was indicted, and whether he sustained any convictions as a result of these incidents.

In Heck v. Humphrey, the Supreme Court of the United States created a

jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

> [i]n order to recover damages for harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance for a writ of habeas corpus. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizant under § 1983.

512 U.S. 477, 486-87 (1994).

Here, as the Court is unable to determine whether plaintiff has been charged and/or convicted of any criminal charges arising out of the incidents underlying his complaint, and whether any potential convictions have been overturned, the Court cannot determine whether his false arrest, false imprisonment, malicious prosecution claims are barred by <u>Heck</u>. As such claims would necessarily call into question the validity of the conviction he is challenging in this action, unless the Court can ascertain wtih certainty that there are no criminal charges pending as a result of these incidents, and that any convictions plaintiff has received, if any, have been overturned or otherwise deemed invalid, the Court cannot permit these claims to proceed. Accordingly, it is recommended that, insofar as plaintiff's complaint attempts to raise claims for false arrest, false imprisonment, and malicious prosecution, these claims be dismissed without prejudice and that plaintiff be provided leave to amend to specify whether there are any charges pending, whether any convictions arose out of these incidents, and, if so, whether they have been overturned.

### c. Absolute Immunity

Here, plaintiff seeks to sue District Attorney Soares and ADA McCanney on what appears to be two grounds (1) refusal to permit him to file a cross-complaint, and (2) permitting an alleged victim to testify before a grand jury without informing the grand jury that the alleged victim had pending criminal charges and/or warrants.

"Because a public prosecutor cannot zealously perform the prosecutorial duties of the office if compelled to work under the constant threat of legal reprisals, such official is shielded from liability for civil wrongs by the doctrine of absolute immunity." Hill v. City of New York, 45 F.3d 653, 656 (2d Cir. 1995). In Hill, the Second Circuit held that

> In determining whether absolute immunity obtains, we apply a "functional approach," looking to the function being performed rather than to the office or identity of the defendant. State prosecutors are entitled to absolute immunity for that conduct "intimately associated with the judicial phase of the criminal process." Thus, a district attorney is absolutely immune from civil liability for initiating a prosecution and presenting the case at trial. Such official is also immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged. Prosecutorial immunity from § 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate."

Id. at 660-61 (internal citations omitted). However, where a prosecutor is involved in "investigative functions normally performed by a detective or police officer," absolute immunity is defeated." See Green v. Cnty. of Monroe, 423 F. App'x 98, 100 (2d Cir. 2011) (summary order) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993); Van Lewis v. Kyle, et al., 18-CV-1128 (MAD/ATB), 2019 WL 643174, at *2 (N.D.N.Y. Feb. 15, 2019)

("Absolute immunity will apply to a prosecutor's conduct that is intimately associated with the judicial phase of the criminal process, but not to a prosecutor's acts of investigation or administration.") (internal quotation marks and citation omitted); see also Imbler v. Pachtman, 424 U.S. 409, 431(1976) (concluding absolute immunity applies for "initiating a prosecution and . . . presenting the State's case"). "Drawing th[e] line between 'advocacy' and 'investigative' functions is vexed' insofar as investigative work may be entitled to absolute immunity when it is 'integral to the overarching advocacy function." O'Neal v. Morales, 679 F. App'x 16, 18 (2d Cir. 2017) (summary order) (quoting Warney v. Monroe Cnty., 587 F.3d 113, 121 (2d Cir. 2009)).

Here, plaintiff challenges the prosecutors apparent involvement in declining to present to the grand jury the alleged victim's criminal history. As deciding the information and witnesses to be presented to the grand jury is clearly in furtherance of the advocacy function of preparing for judicial proceedings, any such conduct would be protected by absolute immunity. See Bernard v. County of Suffolk, 356 F.3d 495 (2d Cir. 2004) (holding absolute immunity shields prosecutors from suit under section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the Grand Jury); see also Maglione v. Briggs, 748 F.2d 116, 118 (2d Cir. 1984) ("The presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity under Imbler."); Bernard, 356 F.3d at 505 ("[A]bsolute immunity shields [the defendant prosecutors] from suit pursuant to § 1983 for . . . any misconduct in the presentation of evidence to the grand juries").

Insofar as plaintiff's complaint attempts to set forth claims for malicious prosecution

14

and false arrest against defendants Soares and McCanney or denial of due process insofar as they did not present evidence of the alleged victim's criminal history to the grand jury, such claims are also barred by prosecutorial immunity as a prosecutor has absolute immunity from a claim for damages regarding the decision to commence a prosecution and in deciding the offenses to be charged. See McKeon v. Daley, 101 F. Supp.2d 79, 87 (N.D.N.Y. 2000) (citing Ying Jing Gan v. City of New York, 996 F.2d 522, 530 (2d Cir. 1993)).

Accordingly, insofar as plaintiff's complaint attempts to raise claims for false arrest and malicious prosecution against defendants Soares and McCanney, it is recommended that such claims be dismissed with prejudice as barred by absolute immunity.


### d. Official Misconduct & Offering False Instrument for Filing

Plaintiff's complaint indicates that he wishes to proceed against the defendants for acts of official misconduct, apparently relating to his belief that Officer McCown submitted a "false document for filing" and, apparently, for the DA and ADA's presentation of a case to the grand jury, apparently without medical proof/photographic evidence and without informing the grand jury of the alleged victim's criminal history and outstanding warrant(s). Compl. at 7.

Pursuant to New York Penal Law § 195.00,

> [a] public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit:
>
>> 1. He commits an act relating to his office but constituting an unauthorized exercise of his official

> functions, knowing that such act is unauthorized; or

> 2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.

N.Y. Penal Law § 195.00.  Plaintiff also contends that defendant McCown offered a false instrument for filing.  Although unclear, plaintiff appears to argue that defendant McCown provided in the Criminal Misdemeanor Charge that he, the officer, was the injured party or complainant, rather than the name of the alleged victim.  Compl. at 5.  Plaintiff alleges, without explanation, that this violates unspecified "State and Federal Constitutional rights."  Id. Arguably, plaintiff is suggesting that defendant violated New York State Penal Law § 175.35.

> A person is guilty of offering a false instrument for filing in the first degree when:

> 1. knowing that a written instrument contains a false statement or false information, and with intent to defraud the state or any political subdivision, public authority or public benefit corporation of the state, he or she offers or presents it to a public office, public servant, public authority or public benefit corporation with the knowledge or belief that it will be filed with, registered or recorded in or otherwise become a part of the records of such public office, public servant, public authority or public benefit corporation; or

> 2. (a) he or she commits the crime of offering a false instrument for filing in the second degree; and
> (b) such instrument is a financing statement the contents of which are prescribed by section 9--502 of the uniform commercial code, the collateral asserted to be covered in such statement is the property of a person who is a state or local officer as defined by section two of the public officers law or who otherwise is a judge or justice of the unified court system, such financing statement does not relate to an actual transaction, and he or she filed such financing statement in retaliation for the performance of official duties by such person.

16

Offering a false instrument for filing in the first degree is a class E felony. N.Y. Penal Law § 175.35 (McKinney 2014).

The law is clear that "there is no private right of action to enforce either state or federal criminal statutes." <u>Delany v. City of Albany</u>, No. 1:18-CV-1259 (LEK/ATB), 2018 WL 5923901, at *5 (N.D.N.Y. Nov. 13, 2018), <u>report and recommendation adopted in part, rejected in part sub nom.</u> <u>Delaney v. City of Albany</u>, 2019 WL 125769 (N.D.N.Y. Jan. 7, 2019) (citing <u>Carvel v. Ross</u>, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011)). Therefore, to the extent plaintiff is seeking defendants' prosecution for official misconduct or for offering a false instrument for filing, such claims cannot proceed as the Court cannot prosecute, nor seek or enforce the prosecution of, defendants. As such, it is recommended that insofar as plaintiff's complaint purports to set forth claims seeking prosecution of defendants for official misconduct or offering a false instrument for filing, these claims be dismissed with prejudice.

### e. First Amendment

A liberal reading of plaintiff's complaint may suggest that plaintiff is contending that defendants violated his First Amendment rights by refusing to allow him to file a cross-complaint, apparently against the alleged victim. <u>See</u> Compl. at 7 ("This selective treatment by the Albany County Prosecutors Office tompunish [sic] (prosecute) this Plaintiff for exercising the Fundamental Constitutional Right to file a Cross-Complaint for which this said Plaintiff was denied."). Arguably, plaintiff is contending that defendants retaliated against him for his alleged conduct by refusing to allow him to file a cross complaint. A

plaintiff alleging a claim of retaliation under the First Amendment must show "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).

Insofar as plaintiff may be arguing that defendants retaliated against him by prosecuting him, which violated his First Amendment rights, "[a]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause that is in reality an unsuccessful attempt to deter or silence criticism of the government." Mozzochi v. Borden, 959 F.2d 1174, 1180 (2d Cir. 1992). As this Court noted above, while discussing Heck, as this Court cannot determine as a matter of law whether defendants had probable cause in arresting plaintiff, it cannot conclude as a matter of law that an arrest violated his First Amendment rights. Thus, to the extent plaintiff may seek to proceed on a claim that defendants arrested him and/or prosecuted him as an act of retaliation, plaintiff must first overcome the hurdle of Heck, as discussed above. Accordingly, it is recommended that plaintiff's complaint, to the extent it can be interpreted as attempting to raise a First Amendment claim, be dismissed without prejudice and with opportunity to amend should plaintiff be able to demonstrate that this claim is not barred by Heck.

### f. Due Process

Plaintiff appears to argue that the police defendants violated his due process rights

18

by denying him the ability to file a cross complaint, and that the DA defendants denied him of his due process rights by failing to inform the grand jury of the alleged victim's criminal history and outstanding warrants. Compl. at 5. As a decision in plaintiff's favor on this claim would necessarily invalidate any criminal conviction, it would be barred by <u>Heck</u>. Accordingly, for the reasons stated above, it is recommended that plaintiff's due process claim be dismissed without prejudice and opportunity to amend to demonstrate whether his claim is barred by <u>Heck</u>.

### g. Equal Protection

Plaintiff appears to argue that defendants violated his Fourteenth Amendment rights insofar as they refused to permit him to file a cross-complaint and presented to the grand jury a case where there was apparently no medical photographic evidence. See generally Compl. Arguably, plaintiff attempts to set forth a selective enforcement claim.

> In order to state a claim under the Equal Protection Clause for Selective Enforcement of the law, Plaintiff must plead that (1) he was "treated differently from other similarly situated" individuals and (2) this "differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." <u>Cine SK8, Inc. v. Town of Henrietta</u>, 507 F.3d 778, 790 (2d Cir. 2007). Where a plaintiff's claim does not allege discrimination based on membership in a particular group, he alleges a "class of one" equal protection claim; he must show that he was intentionally treated differently from others similarly situated and that there was no rational basis for the difference in treatment. Vill. of <u>Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per curiam).

<u>McGuire v. Vill. of Tarrytown</u>, No. 08 CIV. 2049 KTD, 2011 WL 2623466, at *7 (S.D.N.Y.

June 22, 2011). Here, plaintiff does not allege that he was treated differently from other similarly-situated individuals or that his treatment was based on an impermissible consideration. Thus, the Court must assess whether plaintiff sets forth a colorable claim under a "class of one" theory. The only argument the Court can ascertain is that plaintiff was treated differently than other persons who were permitted to file a cross-complaint or from the complainant – the alleged victim. However, there is no argument to support that plaintiff was similarly situated to any other person who may have sought to file a cross-complaint or to the alleged victim. Accordingly, insofar as plaintiff attempts to set forth an equal protection claim based on his argument that he was denied the opportunity to submit a cross complaint, it is recommended this complaint be dismissed. However, due to plaintiff's pro se status, it is recommended that plaintiff be given an opportunity to amend.

### h. Official Capacity Claims

Plaintiff's complaint indicates that he wishes to proceed against the defendants both in their official and unofficial capacities. However, because the defendants are state employees, plaintiff cannot proceed on his section 1983 claims against the defendants in their official capacities. This is because "claims against a government employee in his official capacity are treated as a claim against the municipality." Hines v. City of Albany, 542 F.Supp. 2d 218, 227 (N.D.N.Y. 2008) (citing Hafer v. Melo, 502 U.S. 21, 25 (1991)). Accordingly, it is recommended that all claims against the individual officers in their official capacities be dismissed with prejudice as barred by sovereign immunity. This recommendation has no bearing on plaintiff's ability to proceed against the individual

officers in their individual or, as plaintiff phrases it, unofficial capacities.

## III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**, and it is

**RECOMMENDED**, that the following of plaintiff's claims be **DISMISSED WITH PREJUDICE** all claims against the individual officers in their official capacities: (1) all claims against DA Soares and ADA Jennifer E. McCanney in their individual and official capacities; (2) Monell claims against the Cohoes Police Department; (3) claims seeking prosecution of defendants for official misconduct or offering a false instrument for filing, and it is further

**RECOMMENDED**, that the following of plaintiff's claims be **DISMISSED WITHOUT PREJUDICE AND WITH OPPORTUNITY TO AMEND**: (1) First Amendment, Equal Protection, and Due Process claims against the County of Albany; (2) Monell claims against the County of Albany; and (3) that plaintiff be permitted to attempt to set forth Monell claims against the City of Cohoes; and it is

**ORDERED**, that this Report-Recommendation & Order be served on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has FOURTEEN (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of

the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[4]

Dated: April 26, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[4]    If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(c).